# EXHIBIT I

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 56
-----------------------------------------------------------------------X
JACOBSON FAMILY INVESTMENTS, INC.,
JF INVESTMENT, L.L.C., JF-CRUT, L.L.C.,
MJ INVESTMENT, L.L.C., HOLD'EM
INVESTMENT, LLC, JF FOUNDATIONS, L.L.C.,
MJ 2005 GRATS, LLC, GF INVESTMENT, L.L.C.,
GF-GRATS, L.L.C., MDG INVESTMENT, L.L.C.,
EDG INVESTMENT, L.L.C., SLG INVESTMENT,
L.L.C., GF FOUNDATIONS, L.L.C.,
GF-CRUT, LLC, MDG 1994 GRAT, LLC, BSJ
FOUNDATIONS, LLC, and SG FAMILY
INVESTMENTS, LP,

            Plaintiffs,

                           Index No. 601325/10

  -against-

NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PA, CONTINENTAL CASUALTY
COMPANY, FIDELITY AND DEPOSIT COMPANY OF
MARYLAND, and GREAT AMERICAN INSURANCE
COMPANY,

            Defendants.
-----------------------------------------------------------------------X

**Richard B. Lowe, III, J.:**

  In motion sequence 005, defendants National Union Fire Insurance Company of Pittsburgh, PA, Continental Casualty Company, Fidelity and Deposit Company of Maryland, and Great American Insurance Company (collectively, Defendants) move, pursuant to CPLR 3212, for summary judgment dismissing the complaint on the grounds that plaintiffs suffered no loss as the result of the Ponzi scheme perpetrated by Bernard L. Madoff (Madoff).

  In motion sequence 006, plaintiffs Jacobson Family Investments, Inc., JF Investment, L.L.C., JF-Crut, L.L.C., MJ Investment, L.L.C., Hold'em Investment, LLC, JF Foundations,

1

L.L.C., MJ 2005 Grats, LLC, GF Investment, L.L.C., GF-Grats, L.L.C., MDG Investment, L.L.C., EDG Investment, L.L.C., SLG Investment, L.L.C., GF Foundations, L.L.C., GF-Crut, LLC, MDG 1994 Grat, LLC, BSJ Foundations, LLC, and SG Family Investments, LP (collectively, Plaintiffs) move, pursuant to CPLR 2221, for an order, granting leave to renew their summary judgment motion, decided by this court on June 29, 2011 (June 29 Decision).

## Background

The facts are recited in detail in the June 29 Decision, and will only be repeated in the present motion as necessary.

## Analysis

Plaintiffs' Motion for Leave to Renew

The court will first address Plaintiffs' motion for leave to renew.

"A motion for leave to renew is intended to direct the court's attention to new or additional facts which, although in existence at the time the original motion was made, were unknown to the movant and were, therefore, not brought to the court's attention" (*Garner v Latimer*, 306 AD2d 209 [1st Dept 2003] [internal citations omitted]). "Renewal should be denied where the party fails to offer a valid excuse for not submitting the additional facts upon the original application" (*Foley v Roche*, 68 AD2d 558, 568 [1st Dept 1979]).

Plaintiffs seek leave to renew on the issue of whether their recovery should be limited to their actual losses, as held in the June 29 Decision, rather than the values listed in their last Madoff account statements (the Loss Issue). Plaintiffs assert that the basis of their renewal motion stems from two newly discovered facts, as well as this court's June 16, 2011 decision in *United States Fire Insurance Co. v. Nine Thirty FEF Investments, LLC*, Index No. 603284/09

2

(the 930 Decision).

The two newly-discovered facts alleged are: (1) that defendant National Union Fire Company (National Union) originally negotiated a provision in the bonds sold to Plaintiffs in 2003 (2003 Bonds), limiting covered losses to Plaintiffs' "investment interest" (Loss Limitation Language), but omitted such language from the 2007 fidelity insurance policies (2007 Bonds); and (2) that Defendants deliberately increased the premiums for the 2007 Bonds by a 375% multiplier to account for their view of the total "assets at risk," which expressly included $123 million reported in the Madoff account statements disclosed by Plaintiffs in their application for the 2007 Bonds. Plaintiffs contend that these facts reveal that the Defendants intended and expected to insure the full amounts reflected in the Madoff account statements, and not just Plaintiffs' actual losses, as held by this court.

Based on these facts, newly discovered through deposition testimony and document production, the court grants Plaintiffs' motion to renew their summary motion on the Loss Issue.

Plaintiffs argue that Defendants' omission of the Loss Limitation Language from the 2007 Bonds shows an intent to extend coverage to the full amount of the Madoff account statement. In their view, the "presence of the 'direct loss' language, in the context of the absence of the Loss Limitation [Language]" presents an ambiguity (Memorandum of Law in Support of Plaintiffs' Motion for Leave to Renew, p. 13).

Rider 14 of the primary bond issued by National Union (Primary Bond) states, in part,

1. The following Insuring Agreement will be added to the Policy:

**Outside Investment Advisor**

Loss resulting directly from the dishonest acts of any Outside Investment Advisor,

3

> named in the Schedule below, solely for their duties as an Outside Investment Advisor, on behalf of the Insured, committed alone or in collusion with others, except with a director or trustee of the Insured who is not an Employee, provided however, the Insured shall first establish that the loss was directly caused by dishonest acts of any Outside Investment Advisor which results in improper personal financial gain to such Outside Investment Advisor and which acts were committed with the intent to cause the Insured to sustain such loss.

In the June 29 Decision, this court held that this policy language is unambiguous, subject to one reasonable interpretation. This court further held that the clear and plain language of this provision limits Plaintiffs to actual losses incurred. This court's finding is supported by case law (*see Fed. Deposit Ins. Corp. v United Pac. Ins. Co.*, 20 F3d 1070, 1080 [10th Cir 1994]; *Horowitz v American Intl. Group, Inc.*, 2010 WL 3825737, at *6 [SD NY 2010]).

Plaintiffs now attempt to create an ambiguity by presenting extrinsic evidence of the parties' alleged intent to extend coverage to the full amount of the Madoff statements. However, where as here, the agreement is clear and unambiguous, the intent of the parties must be gleaned from the four corners of the instrument and not extrinsic evidence *(Maser Consulting, P.A. v Viola Park Realty, LLC*, 91 AD3d 836, 2012 NY Slip Op 498, at *2 [2d Dept 2012] [internal quotations and citation omitted]). Plaintiffs cannot use extrinsic evidence to create an ambiguity.

Plaintiffs also argue that the fact that Defendants deliberately increased the premiums for the 2007 Bonds evidences what the parties intended to cover under the Bonds. Again, where an agreement is unambiguous, courts should not consider extrinsic evidence to determine the parties' intent *(Fineman Family, LLC v Third Ave. North LLC*, 90 AD3d 549, 551 [1st Dept 2011]). Thus, the court adheres to its June 29 Decision.

Defendants' Motion for Summary Judgment

In motion sequence 005, Defendants move for summary judgment dismissing Plaintiffs'

4

claims for losses under the 2007 Bonds. Defendants argue that Plaintiffs suffered no actual loss, as they ultimately were "net-winners." Specifically, Defendants argue that the aggregate amount of Plaintiffs' net account balances with Madoff actually made them a net equity winner, withdrawing $5.9 million more than they invested with Madoff.

Defendants assert that aggregation of Plaintiffs' net wins and losses is required under the terms of the Primary Bond, and is fully consistent with Plaintiffs having submitted a Single Proof of Loss, and their conduct in their settlement with Irving H. Picard, the Securities Investors Protection Corporation Trustee (SIPC Trustee), appointed to serve as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC.

On a motion for summary judgment, the movant must make a prima facie showing of entitlement to judgment as a matter of law (*People v Grasso*, 50 AD3d 535, 545 [1st Dept 2008]).

Defendants' first argument that aggregation of Plaintiffs' net wins and losses is required under the terms of the Primary Bond is predicated on three provisions of the Primary Bond, Rider 8, and the Single Loss Limit of Liability provision (Single Loss Provision) and Joint Insured provision (Joint Insured Provision), both contained in General Agreement E of the Primary Bond.

Rider 8 of the Primary Bond, entitled "Named Insured," lists all of the Plaintiffs[1] as the "Complete Named Insured." "Complete Named Insured" is not defined in the Primary Bond, nor in the Rider (*see* Affirmation of Robert Novack, Exhibit 1, Rider 8). Defendants assert that by grouping the Plaintiffs under the umbrella of "Complete Named Insured," it defines them as one insured, and as one insured, their net wins and losses should be aggregated.

---

[1] Rider 8 also lists over 100 other entities and individuals not parties to this lawsuit.

5

However, this interpretation is contradicted by the plain language of Rider 8. Rider 8 does not provide that these entities' net wins and losses should be aggregated. Rather, it is an informational declaration of all the entities and individuals who may draw down from the Bond, in addition to plaintiff Jacobson Family Investments, Inc., who is named as the "Insured" on the Primary Bond. Rider 8 does nothing more than extend coverage to those listed. By its own language that it does not alter, vary, waive or extend any terms or conditions of the Primary Bond, Rider 8 cannot make any substantive changes to the coverage. Defendants' argument that the undefined term "Complete Named Insured" aggregates Plaintiffs' net wins and losses is without merit. This is not what Rider 8 provides for on its face.

Defendants also assert that Plaintiffs want to ignore the definition of "Single Loss," under the Single Loss Provision of the Primary Bond, which is defined as "all covered losses" resulting from Madoff's fraud. Defendants argue that this Provision compels aggregation of Plaintiffs' net wins and losses.

The situation presented in this action is very unique. While typically only an insured who has suffered a loss makes a claim under an insurance policy, here, six of the Plaintiffs, JF-Crut, L.L.C., MJ Investment, L.L.C., MJ 2005 Grats, LLC, GF Investment, L.L.C., MDG Investment, L.L.C., GF Foundations, L.L.C., actually came away with more money than their original investment (Six Net Winners). Under this court's previous ruling that Plaintiffs are limited to actual losses, the Six Net Winners have no losses. Because Plaintiffs feel they are entitled to the balances on the full account statements, they still believe the Six Net Winners suffered a loss under the 2007 Bonds. The Defendants want to use this unique situation to manipulate the Bonds in their favor. However, the policy was not drafted to apply to such a situation where

6

some parties claiming under the Bonds had net gains and some had net losses.

"The interpretation of written contracts which are clear and explicit is a matter for the courts to resolve" (*Eden Music Corp. v Times Square Music Publ. Co.*, 127 AD2d 161, 164 [1st Dept 1987], citing *Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.*, 32 NY2d 285, 291 [1973]). A contract is unambiguous if the language it uses has a definite and precise meaning (*Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). "[I]f the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity" (*Id.* at 569-570).

The Primary Bond's Single Loss Provision provides that,

> Subject to the Aggregate Limit of Liability, the Underwriter's liability for each Single Loss shall not exceed the applicable Single Loss Limit of Liability shown in Item 4 of the Declarations. If a Single Loss is covered under more than one Insuring Agreement or Coverage, the maximum payable shall not exceed the largest applicable Single Loss Limit of Liability

(Affirmation of Robert Novack, Exhibit 1, p. 14).

Single Loss is defined as "all covered loss, including court costs and attorneys' fees incurred by the Underwriter under General Agreement F, resulting from [Madoff's fraud]" (*Id.*).  It is clear, from the plain language of the Single Loss Provision, that the purpose of this Provision is to limit defendant National Union's liability, under the Bond, for separate acts of malfeasance. This Provision limits National Union's liability to $10 million for one or a series of related acts of malfeasance, i.e., the Single Loss Limit of Liability, and limits National Union's total liability under the Bond to $20 million, i.e., the Aggregate Limit of Liability.

Further, the fact that "Single Loss" is defined as "all covered losses" does not change the purpose of the Single Loss Provision. Defendants' argument that this Provision compels

7

aggregation of Plaintiffs' net wins and losses is unreasonable and would require the court to add terms to the Bond that do not exist. A Single Loss is defined as "all covered losses," not all covered "net" losses.

> "Courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include. Hence, courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (*Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 1 NY3d 470, 475 [internal quotes and citations omitted][2004]).

Thus, this court will not stray from the plain language of this Provision.

Defendants also assert that the Joint Insured Provision supports aggregation of Plaintiffs' net wins and losses. Defendants submit extrinsic evidence of testimony from a National Union underwriter to support their claim. Defendants make no claim that the Joint Insured Provision is ambiguous, requiring examination by the court of extrinsic evidence (*Fineman Family, LLC*, 90 AD3d at 551, *supra*), and the court does not find the Joint Insured Provision ambiguous.

The Joint Insured Provision provides that,

> If two or more Insureds are covered under this bond, the first named Insured shall act for all Insureds. Payment by the Underwriter to the first named Insured of loss sustained by any Insured shall fully release the Underwriter on the account of such loss. If the first named Insured ceases to be covered under the bond, the Insured next named shall thereafter be considered as the first named Insured. Knowledge possessed or discovery made by any Insured shall constitute knowledge or discovery by all Insureds for all purposes of this bond. The liability of the Underwriter for loss or losses sustained by all Insureds shall not exceed the amount for which the Underwriter would have been liable had all such loss or losses been sustained by one Insured

(Affirmation of Robert Novack, Exhibit 1, p. 5).

Again, it is clear from the cited language that the main purpose of this Provision was to create an organized procedure to make claims under the Bond. There are over 160 entities or

8

individuals covered under this Bond, as per Rider 8, and if each entity had a claim, without this Joint Insured Provision, the insurance company would be processing significant amounts of paperwork. Assigning one of the Insureds the power to act for others covered under the Bond resolves this issue.

Further, Defendants cannot assert that the last sentence of this Provision compels aggregation of Plaintiffs' net wins and losses. This Provision, like the Single Loss Provision, again only refers to losses, not "net" losses. The court will not add terms in order to create a limitation of coverage.

Defendants have failed to point to any language in the Primary Bond which would require an aggregation of Plaintiffs' net wins and losses. In fact, it is clear from the provisions relied on by Defendants that the Primary Bond does not provide for such. Thus, there will be no aggregation of Plaintiffs' net wins and losses.

Defendants argue that Plaintiffs submitted a single Proof of Loss based on the aggregation of all account balances set forth in the last Madoff statements, evidencing their intent to be treated as a single Insured. As previously stated, where an agreement is unambiguous, as the case here, courts should not consider extrinsic evidence to determine the parties' intent (*Fineman Family, LLC*, 90 AD3d at 551, *supra*). Even if the court did consider this evidence, filing a Single Proof of Claim is in line with the Joint Insured Provision, as it requires that the first named Insured must act for all Insureds.

Defendants also submit Plaintiffs' settlement agreement with the SIPC Trustee as evidence to support their claim that Plaintiffs incurred no covered loss. Specifically, Defendants offer this evidence to prove two things: (1) that it was Plaintiffs' intent to be treated in the

9

aggregate; and (2) that Plaintiffs received full value by settling with the SIPC Trustee, and thus, have no losses.

As the Primary Bond is unambiguous, the court will not accept extrinsic evidence as proof of the Plaintiffs' alleged intent to be subject to aggregation under the Bonds. The court will, however, review the settlement agreement as potential evidence of a recovery by the Plaintiffs.

Under the settlement agreement, Plaintiffs exchanged the rights of JF Investment, L.L.C., Hold'em Investment, LLC, JF Foundations, L.L.C., GF-Grats, L.L.C., EDG Investment, L.L.C., SLG Investment, L.L.C., GF-Crut, LLC, MDG 1994 Grat, LLC, BSJ Foundations, LLC, and SG Family Investments, LP, the ten plaintiffs who deposited more with Madoff than they withdrew (the Net Losers), to settle the liability faced by the Six Net Winners. With this settlement, the Six Net Winners avoided actions against them by the SIPC Trustee, which could have resulted in a recovery by the SIPC of approximately $24 million.

Defendants argue that, under this settlement, the Net Losers received full value for their remaining claims, and thus, suffered no covered loss. Plaintiffs oppose this theory, but concede that, under the settlement agreement, some of the Net Losers received a total cash payment of $2.5 million from the SIPC Trustee.

Section 7 of the Primary Bond, entitle Assignment-Subrogation-Recovery-Cooperation, states in relevant part,

> Recoveries, whether effected by the Underwriter or by the Insured, shall be applied net of the expense of such recovery first to the satisfaction of the Insured's loss which would otherwise have been paid but for the fact that it is in excess of either the Single
> or Aggregate Limit of Liability, secondly, to the

10

> Underwriter as reimbursement of amounts paid in settlement of the Insured's claim, and thirdly, to
> the Insured in satisfaction of any Deductible Amount.

(Affirmation of Robert Novack, Exhibit 1, p. 16).

This provision of the Bond permits a reduction of loss by recoveries. The word "Recoveries" is not defined in the Primary Bond. Defendants argue that "Recoveries" include the intangible value that the Net Losers received as a result of the settlement agreement, and thus, the Net Losers have suffered no actual losses. This an unreasonable interpretation of this provision.

> "The words and phrases used in an agreement must be given their plain meaning so as to define the rights of the parties, and in this regard, it is common practice for the courts of this State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract" (*Mazzola v County of Suffolk*, 143 AD2d 734, 735 [2d Dept 1988] [internal quotes and citations omitted]; *see also 2619 Realty, LLC v Fidelity and Guar. Ins. Co.*, 303 AD2d 299 [1st Dept 2003]).

Black's Law Dictionary defines recovery as "[t]he obtainment of a right to something (esp. damages) by a judgment or decree" (Black's Law Dictionary, [9th ed. 2009]). Here, the Net Losers did not obtain a right to something, they gave up their right to pursue claims in exchange for the promise that the SIPC Trustee would not pursue claims against the Net Winners. Once again, Defendants seek to aggregate Plaintiffs' net wins and losses under the Primary Bond.

Applying the plain language of the Primary Bond, the Net Losers have not received any "Recoveries" besides the alleged total cash payment of $2.5 million from the SIPC Trustee. Defendants cannot use the settlement agreement against Plaintiffs in this action on the issue of aggregation, limiting Plaintiffs' right to recovery under the terms of the Primary Bond. The Bond do not provide for aggregation of Plaintiffs' net wins and losses, and the settlement that the Plaintiffs reached with the SIPC Trustee cannot be used against them in order to alter the

11

language of the Bonds.

In its June 29 Decision, the court held that issues of fact existed as to which Plaintiffs suffered actual losses, which did not, and which suffered losses in excess of the deductible. This issue is no longer in dispute. As the court is adhering to its June 29 Decision in regard to the Loss Issue, Plaintiffs accept, under this ruling, that the Net Winners did not suffer actual losses.[2] Thus, the complaint is dismissed as to them. This leaves the issue of the Net Losers and their actual losses.

Defendants argue that eight of the Net Losers incurred actual losses that are less than the $3 million Single Loss Deductible, and therefore, the claims by these eight plaintiffs should be dismissed, because the $3 million Single Loss Deductible must apply to each separately. However, pursuant to the Primary Bond, a "Single Loss" is defined as "all covered loss, including court costs and attorneys' fees incurred by the Underwriter under General Agreement F, resulting from [Madoff's fraud]." Madoff's fraud was one single act of malfeasance, and all claims by the Net Losers arising out of Madoff's fraud would be a "Single Loss" under the policy, subject to one Single Loss Deductible of $3 million. Thus, the Net Losers are entitled to actual losses, minus any actual cash payments by the SIPC Trustee and the $3 million Single Loss Deductible. The exact amount is to be determined at trial.

## Conclusion

Accordingly, it is

ORDERED that Defendants' motion for summary judgment, is granted, to the extent that

---

[2] For purposes of appeal, Plaintiffs preserve their position that the "net winners" did suffer actual losses covered under the 2007 Bonds, as Plaintiffs maintain that Defendants sold insurance covering the full Madoff account statement values.

12

plaintiffs JF-Crut, L.L.C., MJ Investment, L.L.C., MJ 2005 Grats, LLC, GF Investment, L.L.C., MDG Investment, L.L.C.,GF Foundations, L.L.C. claims are dismissed; and it is further

ORDERED that Plaintiffs' motion for an order granting leave to renew their summary judgment motion is granted; and it is further

ORDERED that, upon renewal, the court adheres to its Decision and Order, dated June 29, 2011.

Dated: February 27, 2012

ENTER:

_____
JUSTICE RICHARD C. LOWE III