Daniel J. Kornstein (DJK-3264)
William B. Pollard, III (WBP-9252)
Amy C. Gross (ACG-8836)
KORNSTEIN VEISZ WEXLER & POLLARD, LLP
757 Third Avenue
New York, New York 10017
Tel.: 212-418-8600
Fax: 212-826-3640
Attorneys for Moving Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
SECURITIES INVESTOR PROTECTION      :
CORPORATION,                        : Adv. Pro. No. 08-01789 (BRL)
                                    :
            Plaintiff-Applicant,    : SIPA LIQUIDATION
                                    :
            v.                      : (Substantively Consolidated)
                                    :
BERNARD L. MADOFF INVESTMENT        :
SECURITIES, L.L.C.,                 :
                                    :
            Defendant.              :
------------------------------------X
In re:                              :
                                    :
BERNARD L. MADOFF,                  :
                                    :
            Debtor.                 :
------------------------------------X
IRVING H. PICARD, Trustee of the    :
Liquidation of Bernard L. Madoff    :
Investment Securities, L.L.C.,      : Adv. Pro. No. 10-05415 (BRL)
                                    :
            Plaintiff,              :
                                    : 11 Civ. 08018 (JSR)
            v.                      :
                                    :
AMERICAN SECURITIES                 : **CERTAIN DEFENDANTS' REPLY**
MANAGEMENT, L.P., formerly known    : **MEMORANDUM OF LAW IN FURTHER**
as AMERICAN SECURITIES, L.P.,       : **SUPPORT OF MOTION TO**
et al.                              : **WITHDRAW REFERENCE**
                                    :
            Defendants.             :
------------------------------------X

## Table of Contents

|   |   | Page |
|---|---|---|
| 1. | Victims Not Victimizers | 1 |
| 2. | Running Away from Recent Precedent | 1 |
| 3. | No Subject Matter Jurisdiction | 4 |
| 4. | No Jurisdictional Waiver | 8 |
| 5. | Stern | 8 |
|   | Conclusion | 10 |

Table of Authorities

Cases                                                                Page(s)

Celotex Corp. v. Edwards,
     514 U.S. 300 (1995) . . . . . . . . . . . . . . . . . . . . . 5

Exchange Nat'l Bank of Chicago v. Wyatt,
     517 F.2d 453 (2d Cir. 1975) . . . . . . . . . . . . . . . 6, 7

Granfinanciera, S.A. v. Nordberg,
     492 U.S. 33 (1989) . . . . . . . . . . . . . . . . . . . . . 9

In re Bernard L. Madoff Inv. Secs., Inc.,
     654 F.3d 229 (2d Cir. 2011) . . . . . . . . . . . . . . . . 6

In re Continental Capital Inv. Servs., Inc.,
     No. 03-3370, 2009 WL 1604703
     (Bankr. N.D. Ohio 2009) . . . . . . . . . . . . . . . . . . 6

In re Inv. Bankers, Inc.,
     4 F.3d 1556 (10th Cir. 1993) . . . . . . . . . . . . . . . . 6

In re Sunpoint Secs., Inc.,
     262 B.R. 384 (Bankr. E.D. Tex. 2001) . . . . . . . . . . . . 6

In re Teleservices Group, Inc.,
     456 B.R. 318 (Bankr. W.D. Mich. 2011) . . . . . . . . . . . 9

Jacobson Family Investments, Inc.
v. Nat'l Union Ins. Co. of Pittsburgh, PA,
     Index No. 601325/10 (Sup. Ct. N.Y. Co. Feb. 27, 2012)
     (Lowe, J.) . . . . . . . . . . . . . . . . . . . . . . . . . 1

Picard v. Flinn Inv., LLC,
     463 B.R. 280 (S.D.N.Y. 2011) . . . . . . . . . . . . . . 4, 8

Picard v. HSBC Bank, PLC,
     450 B.R. 406 (S.D.N.Y. 2011) . . . . . . . . . . . . . . 2, 3

Picard v. JP Morgan Chase,
     454 B.R. 307 (S.D.N.Y. 2011) . . . . . . . . . . . . . . 2, 3

Picard v. Katz,
     11 Civ. 3605 (S.D.N.Y.) (Rakoff, J.) . . . . . . . . . 2-4, 10

Picard v. Katz, No.
     11 Civ. 3605(JSR), 2012 WL 127397
     (S.D.N.Y. Jan. 17, 2012) . . . . . . . . . . . . . . . . . . 4

Page(s)

SEC v. Albert & Maguire Secs. Co., Inc.,
    378 F. Supp. 906 (E.D. Pa. 1974) . . . . . . . . . . . . . 6

Stern v. Marshall,
    131 S.Ct. 2594 (2011) . . . . . . . . . . . . . . . 5, 7-9

Turner v. Davis, Gillenwater & Lynch
(In re Inv. Bankers, Inc.),
    136 B.R. 1008 (D. Colo. 1989) . . . . . . . . . . . . . 6


Statutes and Other Authorities

11 U.S.C. § 548 . . . . . . . . . . . . . . . . . . . . . . . 8

15 U.S.C. § 78eee(b)(4) . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. §§ 78o, 78ccc . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . 8

Ralph Brubaker,
    Article III's Bleak House (Part II):
    The Constitutional Limits of Bankruptcy Judges' Core
    Jurisdiction,
    31 No. 9 BLL 1 (Sept. 2011) . . . . . . . . . . . . . . 9

Roberta A. Colton and Stephanie C. Lieb,
    Is Bankruptcy Court Jurisdiction in
    Flux Because of Anna Nicole Smith?,
    86-JAN Fla. B.J. 36, 40 (Jan. 2012) . . . . . . . . . . 9

Karen Cordry, Stern v. Marshall: Much Ado About Something,
    2011 No. 12 Norton Bankr. L. Adviser 1 (Dec. 2011) . . . 9

Jonathan P. Friedland,
    Commercial Bankruptcy Litigation § 3:4 (Jan. 2012) . . . 9

Henry J. Friendly,
    Federal Jurisdiction: A General View (1973) . . . . . . 6

Henry J. Friendly,
    The Historic Basis of Diversity Jurisdiction,
    41 Harv. L. Rev. 483 (1928) . . . . . . . . . . . . . . 6

Michael A. Sabino,
    Norton Annual Survey of Bankruptcy Law,
    2002 Ann. Surv. of Bankr. Law 7 (2002) . . . . . . . . . 7

Page(s)

Thomas J. Salerno and Jordan A. Kroop,
    Bankruptcy Litigation and Practice: A Practitioner's Guide
    § 3.07 (2012) . . . . . . . . . . . . . . . . . . . . . . . 9

Stern v. Marshall: The Supreme Court's Continuing Erosion of
    Bankruptcy Court Jurisdiction and Article I Courts,
    85 Am. Bankr. L.J. 387 (Fall 2011) . . . . . . . . . . . . 9

The opposing briefs highlight why the bankruptcy court reference should be withdrawn.

1. <u>Victims Not Victimizers</u>. Avoiding the merits of the motion, the Trustee starts by citing disputed allegations in his pleading as if they were facts in an effort to misportray the defendants. He tries to manufacture a scandal out of a routine business reorganization, the use of common limited liability agreements, and the purchase of an insurance policy that covered multiple investments, not just the Madoff investment, which was not a "one of a kind" policy. See <u>Jacobson Family Investments, Inc. v. Nat'l Union Ins. Co. of Pittsburgh, PA</u>, Index No. 601325/10 (Sup. Ct. N.Y. Co. Feb. 27, 2012) (Lowe, J.), attached as Ex. I to the Kornstein Mar. 16, 2012 Reply Decl. The Trustee's allegations also fail to specify or explain which defendants supposedly knew about which red flags, when they knew, and how this knowledge can or should be imputed to other defendants.

He tries to obscure his attempt to claw back funds from defendants who have already lost tens of millions of dollars. Of the nearly $92 million he seeks to recover, only about $10 million represents (according to the Amended Complaint) lost profits, and the actual profits are even less. See Am. Cplt. ¶ 9 (Ex. B to Kornstein Nov. 7, 2011 Moving Decl.). In any event, the facts, even as misdescribed by the Trustee, do not militate against withdrawal of the reference.

2. <u>Running Away from Recent Precedent</u>. The opposing briefs are more notable for what they do not say than for what they do

say. They are "willfully blind" to this Court's having rejected -- a mere eight months ago, in Picard v. Katz, 11 Civ. 3605 (S.D.N.Y.) (Rakoff, J.) -- the precise arguments they raise again here. The Trustee and SIPC are also conspicuously silent about the decisions granting motions to withdraw references in Picard v. HSBC Bank, PLC, 450 B.R. 406 (S.D.N.Y. 2011), and Picard v. JP Morgan Chase, 454 B.R. 307 (S.D.N.Y. 2011). The attempts by the Trustee and SIPC to in effect reargue those cases should be rejected.

The Court already determined in Katz that it, rather than the Bankruptcy Court, should preside over claw back litigation against BLMIS investors raising issues like those presented here. Katz found that resolving such litigation will necessarily entail in-depth analysis and interpretation of non-bankruptcy law -- specifically, the securities laws implicated by the claims of "willful blindness" asserted against the Katz defendants and defendants here.

In Katz, at the July 1, 2011 oral argument on the motion to withdraw the reference, the Court explained that the inquiry into whether defendants were "willfully blind" necessarily entails an inquiry of "what there was a duty to look at" (Reply Decl. Ex. H at 10), which, in turn, hinged on "non-bankruptcy law." Id. at 11-12, 14, 28. The Court ultimately held:

> Here, the movants have made, in the Court's view, a plausible argument that the duty of inquiry of their clients in a securities context is governed by securities law and cannot be overridden after the fact by the

2

> bankruptcy law or by the interpretation of a
> nonbankruptcy law, SIPA, being asserted by
> the trustee.

Id. at 33. The Court concluded that it was "obliged" to withdraw the reference and reiterated that, regardless of whether the Katz Defendants proved correct on the merits, their argument

> raise[d] a highly material issue of
> interpretation not just of bankruptcy law,
> which is for the Bankruptcy Court in the
> first instance, but of nonbankruptcy law,
> securities law of SIPA, and indeed, there are
> even intimations, though not raised by
> movants, of constitutional issues.[1]

Id.[2]

HSBC and JP Morgan Chase also rejected the arguments, repeated here by the opposition, that SIPA is "effectively" a bankruptcy statute. Those decisions made the point, articulated in our moving brief, that SIPA was deliberately codified in Title 15 (the securities laws) and not in Title 11 (the Bankruptcy Code). JP Morgan Chase, 454 B.R. at 316 ("SIPA expressly provides that it is part of the securities laws and is codified in Title 15, not Title 11."); HSBC, 450 B.R. at 410 (SIPA

---

[1] Those constitutional issues have been raised by defendants here, so that this case, a fortiori, should be heard by this Court and not the Bankruptcy Court.

[2] See also Picard v. Katz, motion to dismiss decision attached as Ex. D to Moving Decl., at 14 (pointing out that, in the "context of a SIPA trusteeship," "bankruptcy law is informed by federal securities law"); HSBC, 450 B.R. 406 (withdrawal of reference mandatory due to multiple issues that would require consideration of both bankruptcy law and other law); JP Morgan Chase, 454 B.R. 307 (same).

3

deliberately placed in Title 15 because it is "first and foremost, concerned with the protection of securities investors" and a substantial issue under SIPA "is therefore, almost by definition, an issue 'the resolution of which requires consideration of both Title 11 and other laws of the United States.'"). Neither opposition brief mentions these key holdings.

Except for a single passing reference, SIPC's brief omits any mention of Katz, and the Trustee relegates Katz to a single footnote. Both references concern § 546(e) of the Bankruptcy Code. The Trustee says § 546(e) is not a viable defense, despite Katz, and SIPC says § 546(e) does not apply to our case, which involves allegations of subsequent transfers under § 550(a). SIPC oversimplifies Katz, which actually held that transfers made pursuant to § 550(a) were only outside the § 546(e) safe harbor to the extent that the initial transfer fell within the parameters of § 548(a)(1)(A), namely, made with actual fraud. Picard v. Katz, No. 11 Civ. 3605(JSR), 2012 WL 127397, at *6 (S.D.N.Y. Jan. 17, 2012) (decision denying Trustee's motion to immediately appeal Court's motion to dismiss decision). See also Picard v. Flinn Inv., LLC, 463 B.R. 280, 285-86 (S.D.N.Y. 2011) (granting motion to withdraw reference as to issue of applicability of Bankruptcy Code § 546(e) safe harbor, as issue of its application to Madoff cases will require "novel and significant interpretation of the securities law").

3. <u>No Subject Matter Jurisdiction</u>. The opposition

4

misplaces its reliance on 15 U.S.C. § 78eee(b)(4). Reference statutes, such as § 78eee(b)(4), are not jurisdictional statutes and do not expand the bankruptcy court's subject matter jurisdiction. See Stern v. Marshall, 131 S.Ct. 2594, 2607 (2011). Rather, "[t]he jurisdiction of the bankruptcy courts . . . is grounded in, and limited by, statute . . . 28 U.S.C. § 1334(b)," which confines that jurisdiction to "civil proceedings arising under title 11, or arising in or related to cases under title 11." Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). Section 78eee(b)(4) does not confer <u>jurisdiction</u> on the bankruptcy court to adjudicate a SIPA liquidation.

A court to which a reference is made must have subject matter jurisdiction, and if it does not, it may not hear the referred action. The opposition has not shown that a SIPA liquidation arises "under" or "in [a] case[] under" Title 11, or is "related to" such an action. The briefs cite instead statutes and case law stating that a SIPA liquidation is "essentially" a bankruptcy proceeding. But that verbal formulation does not come within the plain words of the statutory grant of bankruptcy subject matter jurisdiction. To illustrate: If Congress passed a law requiring referral of disputes over Food and Drug Administration rulings to the bankruptcy court, such a law alone would not give the bankruptcy court jurisdiction to hear those disputes.

It does not help the opposition to assert that Congress exercised its Bankruptcy Clause powers to enact SIPA. The

5

snippets of dicta for that assertion come from cases that have no supporting analysis, are irrelevant, or derive from extraneous issues.[3] This is particularly true for Exchange Nat'l Bank of Chicago v. Wyatt, 517 F.2d 453, 455 (2d Cir. 1975).

Wyatt is not about subject matter jurisdiction. The words "subject matter jurisdiction" do not appear anywhere in the opinion. This omission is particularly significant because Judge Friendly, who wrote the Wyatt opinion, was, throughout his fabled career, a scholar of federal jurisdiction. From his early Harvard Law Review piece in 1928 to his Columbia Carpentier Lectures in November 1972[4] and after, Judge Friendly paid close and careful attention to federal jurisdiction. Given Judge Friendly's lifelong focus on federal jurisdiction, the absence of

---

[3] See In re Bernard L. Madoff Inv. Secs., Inc., 654 F.3d 229, 242 n.10 (2d Cir. 2011) (discussing SIPA procedures in context of how to determine net equity); In re Adler Coleman Clearing Corp., 195 B.R. 266, 268 (Bankr. S.D.N.Y. 1996) (resolving disputes over customer claims in SIPA proceeding); In re Inv. Bankers, Inc., 4 F.3d 1556, 1563-65 (10th Cir. 1993) (finding bankruptcy court had jurisdiction over case brought under SIPA without considering constitutional source of that jurisdiction); In re Continental Capital Inv. Servs., Inc., No. 03-3370, 2009 WL 1604703, at *1 (Bankr. N.D. Ohio 2009) (stating, without analysis, on motion to serve subpoena in SIPA liquidation, that it had jurisdiction pursuant to 15 U.S.C. § 78eee(b)(4)); In re Sunpoint Secs., Inc., 262 B.R. 384, 391-95 (Bankr. E.D. Tex. 2001) (finding case bringing various state law tort and contract claims against debtor's auditors "related to" Title 11 proceeding); Turner v. Davis, Gillenwater & Lynch (In re Inv. Bankers, Inc.), 136 B.R. 1008, 1016 (D. Colo. 1989) (finding that bankruptcy courts were best suited to preside over SIPA liquidations but not considering constitutional basis); SEC v. Albert & Maguire Secs. Co., Inc., 378 F. Supp. 906, 911 (E.D. Pa. 1974) (finding SIPA did not violate the Fifth Amendment).

[4] Henry J. Friendly, The Historic Basis of Diversity Jurisdiction, 41 Harv. L. Rev. 483 (1928); Henry J. Friendly, Federal Jurisdiction: A General View (1973).

6

that phrase in Wyatt is striking and anything but inadvertent. Had Judge Friendly meant to make a pronouncement on federal subject matter jurisdiction, he would have said so explicitly.

Wyatt involved a statute found in the Bankruptcy Act of 1898, as amended, permitting referral of SIPA proceedings to a bankruptcy referee. The Second Circuit decided the case based on principles of statutory construction in a holding irrelevant to the issues now before the Court. The parties in Wyatt did not raise any constitutional issues; the court did so on its own, unnecessarily, and addressed SIPA's constitutional underpinnings without any substantial analysis.

The outcome in Wyatt appears based more on policy -- Congress did not "intend to dump [SIPA claims] on already overburdened district courts" -- than constitutional interpretation. See id. at 457-58. But neither administrative efficiency concerns nor tradition -- even purported decades of it -- can overcome a jurisdictional bar. See Stern, 131 S.Ct. at 2619. And where reference withdrawal is mandatory, judicial economy is irrelevant.

Wyatt as a basis of jurisdictional authority is also undermined by 11 U.S.C. § 742. That statute limits bankruptcy liquidation of insolvent broker-dealers that operate intrastate only, and are not covered by SIPA. Michael A. Sabino, Norton Annual Survey of Bankruptcy Law, 2002 Ann. Surv. of Bankr. Law 7 (2002). This congressional intent is made clear by the legislative history of the Bankruptcy Act. See H. R. Rep. No.

7

595, 95th Cong., 1st Sess., 267-68. In SIPA, by contrast, Congress used its Commerce Power to provide for liquidation of an <u>interstate</u> broker-dealer (<u>see</u> 15 U.S.C. §§ 78o, 78ccc), <u>which need not be based on insolvency</u>. This is consistent with SIPA's legislative history. "[SIPA] provides that SIPC members will be liquidated in special proceedings <u>outside the Bankruptcy Act</u>." <u>Wyatt</u>, 517 F.2d at 459 n.12 (quoting Senator Bennett) (emphasis added).

The only jurisdictional basis for a SIPA liquidation is federal question jurisdiction, 28 U.S.C. § 1331, which the Trustee and SIPC have not refuted.

4. <u>No Jurisdictional Waiver</u>. Defendants did not consent to bankruptcy court jurisdiction by making a claim against the SIPA estate. The argument to the contrary was rejected by this Court in <u>Flinn</u>, 463 B.R. at 283 n.2, a case that appears in neither opposition brief. Consent, moreover, cannot vest a court with subject matter jurisdiction that it otherwise lacks. Submitting a claim against a SIPA estate is not consent to allow a bankruptcy court to adjudicate fraudulent conveyance claims that do not arise in a bankruptcy action. Finally, SIPC declared that movants are not Madoff customers and, therefore, they have, in SIPC's view, no claims against the estate to be adjudicated.

5. <u>Stern</u>. Apart from the lack of statutory jurisdiction, <u>Stern</u>, even applied narrowly, demonstrates that the Bankruptcy Court lacks constitutional authority to adjudicate the Trustee's claims. <u>Stern</u> establishes that those claims, including any 11

8

U.S.C. § 548 claims, are based on private rights, and, as such, must be adjudicated in an Article III Court. See Stern, 131 S.Ct. at 2608-11, 2618. For the same reason, defendants here are entitled, if they wish, to a jury trial. See Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 60-61 (1989).

At this early date, the precise implications of Stern are still unclear.[5] Some commentators believe Stern "call[s] into serious question the constitutionality of Congress' 27-year-old statutory grant of jurisdiction to bankruptcy courts."[6] Others argue that Stern is to be applied more narrowly and changes little.[7] This uncertainty about applicability of that case and the principles underlying it is another reason why the issues here should be decided by an Article III judge, rather than an Article I judge.

Any argument based on the Amended Standing Order of

---

[5] See Jonathan P. Friedland, Commercial Bankruptcy Litigation § 3:4 (Jan. 2012); Eric G. Behrens, Stern v. Marshall: The Supreme Court's Continuing Erosion of Bankruptcy Court Jurisdiction and Article I Courts, 85 Am. Bankr. L.J. 387 (Fall 2011).

[6] Thomas J. Salerno and Jordan A. Kroop, Bankruptcy Litigation and Practice: A Practitioner's Guide § 3.07 (2012). See also In re Teleservices Group, Inc., 456 B.R. 318 (Bankr. W.D. Mich. 2011) (finding Stern prevented it from entering final judgment on avoided transfers and questioning entire basis of bankruptcy court's jurisdiction over core claims); Ralph Brubaker, Article III's Bleak House (Part II): The Constitutional Limits of Bankruptcy Judges' Core Jurisdiction, 31 No. 9 BLL 1 (Sept. 2011).

[7] See Roberta A. Colton and Stephanie C. Lieb, Is Bankruptcy Court Jurisdiction in Flux Because of Anna Nicole Smith?, 86-JAN Fla. B.J. 36, 40 (Jan. 2012); Karen Cordry, Stern v. Marshall: Much Ado About Something, 2011 No. 12 Norton Bankr. L. Adviser 1 (Dec. 2011).

Reference is meritless. This withdrawal motion is about more than whether the Trustee's claims are core or non-core claims. The core/non-core dichotomy, furthermore, is irrelevant to mandatory withdrawal and, in any event, remains an issue to be resolved before an Article III Court.[8]

### Conclusion

For the reasons given here, in our main brief, and in this Court's decision in Katz, the reference to the Bankruptcy Court should be withdrawn.

Dated:   New York, N.Y.
         March 16, 2012

                            Respectfully submitted,

                            KORNSTEIN VEISZ WEXLER
                              & POLLARD, LLP

                            By: /s/ Daniel J. Kornstein
                            Daniel J. Kornstein (DJK-3264)
                            William B. Pollard, III (WBP-9252)
                            Amy C. Gross (ACG-8836)
                            757 Third Avenue
                            New York, New York 10017
                            (212) 418-8600

                            Attorneys for Moving Defendants

---

[8] While 28 U.S.C. § 157(b)(2) may indicate otherwise, that creates, at best, a tension in the law more appropriately addressed by a district court than a bankruptcy court. See Flinn, 463 B.R. at 287-88.

10